UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WENDY DREWS,

                 Plaintiff,

        -against-

SUFFERN CENTRAL SCHOOL DISTRICT, et al.,

              Defendants.

24-CV-6696 (LLS)

ORDER OF DISMISSAL, SEVERANCE, AND TRANSFER

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed this complaint alleging that Defendants violated her rights in connection with her now-adult son's education in Rockland County and his removal from her custody. By order dated April 14, 2025 (ECF 14), the Court dismissed the complaint for failure to state a claim but granted Plaintiff leave to replead her own claims arising under the Individuals with Disabilities Education Act (IDEA) or other federal statutes.[1] Plaintiff filed an amended complaint (ECF 15), and the Court has reviewed it.

In the amended complaint, Plaintiff sues numerous defendants in connection with events in Rockland County. Plaintiff also adds Defendant Fort Hamilton High School, which is the school in Kings County, New York, that her son currently attends, and the New York City Department of Education (DOE). On September 30, 2025, Plaintiff asked that the claims in the amended complaint arising in Brooklyn be severed from this action and transferred. (ECF 17.) For the reasons set forth below, the Court grants Plaintiff's request to sever the Kings County

---

[1] The Court also held that because she was acting *pro se*, Plaintiff could only pursue her own claims; she cannot litigate her children's claims without counsel. (ECF 14 at 4.)

claims and transfer them to the United States District Court for the Eastern District of New York and dismisses Plaintiff's remaining claims.

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating

2

legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following facts are alleged in Plaintiff's amended complaint.[2] Plaintiff's son E.B. attended public schools in the Suffern Central School District and attended Rockland BOCES, a vocational school. Plaintiff sues Suffern Central School District and two of its staff members (Dr. Amy McKenzie, Supervisor of Secondary Special Services, and Lawrence Mautone, Assistant Superintendent Human Resources); Suffern High School (SHS) and SHS Assistant Principal Danielle Castaldo and Counselor Janet Leale; Rockland BOCES; and Social Worker Charlene Santelli, who is also alleged to have worked with Rockland BOCES and SHS.[3]

Plaintiff alleges that Defendants attempted to (1) institutionalize E.B. under a "false [Seriously Emotionally Disturbed] SED classification"; and (2) destabilize the family in order to provoke intervention from Child Protective Services (CPS) and "set the stage for CPS intervention and removal." (ECF 15 at 5.) In June 2022, Plaintiff met Greson Lovera (known as "Jersey"), from the Rockland County Partnership for Safe & Healthy Youth Center. In fall 2022, Social Worker Santellli and SHS arranged for E.B. to meet with Lovera during the school day, under the "pretext of community support." (*Id.* at 5.)

Plaintiff alleges that, after E.B. began meeting with Lovera, E.B.'s mental and emotional health declined rapidly, though she does not make any specific allegation of wrongdoing on

---

[2] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

[3] Plaintiff also sues Fort Hamilton High School in Brooklyn, New York, and the DOE in connection with E.D.'s experience at Fort Hamilton High School. Plaintiff alleges, among other things, that the DOE denied her requests for records under the New York State Freedom of Information Law (FOIL). By letter dated September 30, 2025, Plaintiff requested that these claims be severed. (ECF 17.)

Lovera's part.[4] Plaintiff asserts that, although Social Worker Santellli stated that "we want to help" the family, in fact, this community support was actually part of a "coldly calculated plan" to harm and destabilize the family, in order to provoke intervention from CPS. Plaintiff was falsely accused of educational and medical neglect and was told that unless she provided medical documentation, a report would be made to CPS. (*Id.* at 7.) Plaintiff asserts that her son "did not miss 71 days of school," and that she had "filed home schooling documents." (*Id.*) From March 6, 2023, until May 18, 2023, E.B. met at the library with a tutor provided by SHS. (*Id.*) Plaintiff "said no to displacing [her] son into residential SED state-private institution," (*id.*), and nothing in the amended complaint suggests that he was ever placed in a restrictive setting.

Plaintiff alleges that E.B. was diagnosed with a severe circadian rhythm disorder, stemming from trauma in the fall of 2022. In December 2022, Plaintiff met Lawrence Mautone at the Suffern Central School District building after she filed a police report and was unable to secure legal help.[5] On an unspecified date, Plaintiff wrote to Mike Lawler, of the U.S. House of Representatives, 17th District of New York, for help with alleged harassment and retaliation at SHS. She alleges that Defendant Lawler was "connected to people in the RICO case." (*Id.* at 8.) She also sues Mike Hawes, whom she describes as the "point of contact" in her district. Plaintiff alleges that she wrote Hawes a letter seeking help regarding issues with the school, but he failed to provide effective assistance.

---

[4] Dr. Evelyn Wasserman, who is alleged to have worked as a "state agency travel nurse," performed a psychological evaluation on E.B. before he started meeting with Lovera. Angela Rinky, another "state agency travel nurse," allegedly spoke to Plaintiff and informed her that the school had misclassified her son.

[5] The police report seems to have been a separate matter about a neighbor, which Plaintiff has raised in her other litigation.

Plaintiff asserts claims, under 42 U.S.C. § 1983, for alleged violations of her rights under the First and Fourteenth Amendments, as well as claims under 42 U.S.C. § 1985, for alleged conspiracy to interfere with civil rights. She contends that unspecified Defendants made "false CPS reports." Plaintiff also invokes the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act (ADA). She contends that Defendants have engaged in "misuse of [the individualized education plan (IEP)]." Plaintiff seeks damages and injunctive relief to correct records from CPS and E.B.'s education records.

Plaintiff has brought other cases that refer to CPS's removal of E.B. from her custody, some of which remain pending. *See*, *e.g.*, *Drews v. Rockland Cnty. Officials*, No. 25-CV-2710 (LLS) (S.D.N.Y.) (dismissal of complaint against "judges," "police," "DSS workers" and others, with leave to replead); *Drews v. Vill. of Suffern*, No. 24-CV-6700 (LTS) (SD.N.Y. filed Aug. 28, 2024) (complaint naming Suffern High School and others voluntarily dismissed); *Drews v. Greater Mental Health of New York*, No. 24-CV-6699 (S.D.N.Y. Nov. 19, 2024) (complaint against medical providers conducting evaluation in connection with Family Court matters dismissed); *Drews v. Adams*, No. 24-CV-6698 (NSR) (S.D.N.Y.) (pending complaint asserting claims against Police Officer Adams regarding the removal on May 31, 2023, of Drews's then-minor son from her custody); *Drews v. GoldOller Real Est. Invs.*, No. 24-CV-6697 (LLS) (S.D.N.Y.) (dismissing with leave to replead Plaintiff's complaint alleging that on May 31, 2023, the apartment property manager "unlocked [the] door . . . and allowed the police without a warrant to abduct [her] 16 year old son").

**DISCUSSION**

**A.   Conspiracy**

To state a claim of conspiracy under Section 1983, a plaintiff must plead facts showing "(1) an agreement between two or more state actors (or between a state actor and a private entity); (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). To state a claim of conspiracy under Section 1985(3), a plaintiff must allege facts suggesting the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection (or the equal privileges or immunities) of the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of her right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). In addition, "the [Section 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks and citation omitted).

Vague and unsupported assertions of conspiracy will not suffice to state a claim upon which relief can be granted, whether under Section 1983 or Section 1985(3). *See, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (holding that a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end"); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

Plaintiff asserts generally that Defendants had a calculated plan to "destabilize" her family and "provoke intervention" from CPS. She does not, however, allege facts plausibly suggesting that Defendants entered into an agreement, express or tacit, to achieve an unlawful end. Although Plaintiff contends that there were disagreements about whether her son had missed a certain number of school days, whether home schooling requirements were satisfied,

6

and whether E.B. would benefit from a therapeutic residential program, she does not include facts supporting her conclusory allegations that Defendants conspired to "destabilize" the family. Plaintiff's vague conspiracy allegations are insufficient to state a claim under Section 1983 or 1985(3). She also does not plead any facts suggesting any class-based invidious discriminatory animus, for purposes of a conspiracy claim under Section 1985(3). The amended complaint therefore does not state a claim upon which relief can be granted for conspiracy under Section 1983 or 1985(3), and the Court dismisses these claims. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.    RICO**

To state a claim for damages under RICO a plaintiff has two pleading burdens. *See Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). First, a plaintiff must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as "criminal RICO," by alleging the following elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a " pattern"  (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise"  (7) the activities of which affect interstate or foreign commerce. *Id*. (citing 18 U.S.C. § 1962(a)-[c]). Second, to invoke RICO's civil remedies of treble damages, a plaintiff must further allege that the plaintiff was "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *see Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 601-604 (2025).

Plaintiff describes the actions of unspecified defendants as "very coldly calculated Premeditated harm to [an] innocent family," and she adds that "[t]o go through a coordinated Pattern of reta[li]ation, obstruction, and institutional abuse is chilling." (ECF 15 at 5.) These and other general allegations of a pattern, or of coordination on the part of Defendants, appear to form the basis of Plaintiff's RICO claim. The amended complaint, however, does not allege facts

that plausibly suggest criminal activity on the part of any defendant, and Plaintiff does not plead facts establishing the predicate acts, enterprise, pattern of racketeering activity, or conspiracy elements of a RICO claim. Plaintiff thus fails to state a claim on which relief can be granted for a violation of RICO, and the Court dismisses this claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.    Civil Rights Claims**

Plaintiff invokes 42 U.S.C. § 1983, alleging violations of her rights under the First and Fourteenth Amendments to the United States Constitution.

**1.    First Amendment Claims**

The allegations of the amended complaint appear to suggest that Defendants retaliated against Plaintiff, in violation of her rights under the First Amendment, for pursuing unspecified legal rights. Generally, a First Amendment retaliation claims requires a plaintiff to establish that: "(1) [the] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [the plaintiff]; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 273 (2d Cir. 2011). "In the context of a First Amendment retaliation claim, . . . retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (quoting *Washington v. Cnty of Rockland,* 373 F.3d 310, 320 (2d. Cir. 2004)) (internal quotation marks omitted). Causation may be shown indirectly by, among other things, alleging that the protected activity was followed closely by a retaliatory action. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001).

Here, Plaintiff has not identified which Defendants were personally involved in violating her rights under the First Amendment. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants

8

in the alleged constitutional deprivations is a prerequisite to an award of damages under

§ 1983.") (internal quotation marks omitted).[6] She also has not alleged facts identifying her

protected First Amendment activities – that is, what are the legal proceedings in which she

participated and for which she allegedly suffered retaliation. In addition, Plaintiff has not pleaded

facts showing a causal connection between her protected activity and any adverse action.

Plaintiff thus fails to state a claim upon which relief can be granted for a violation of her rights

under the First Amendment, and the Court dismisses this claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

  **2.  Due Process Claims**

 The Fourteenth Amendment provides that no state shall "deprive any person of life,

liberty, or property, without due process of law." U.S. Const. Amend XIV, § 1. Where a plaintiff

sues a defendant "to enforce procedural due process rights, a court must determine (1) whether a

[liberty or] property interest is implicated, and if it is, (2) what process is due before the plaintiff

may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citation

omitted). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a

meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)

(internal quotation marks and citations omitted).

 The allegations of the amended complaint are insufficient to allege a violation of

Plaintiff's rights under the Due Process Clause. Plaintiff refers to Family Court proceedings,

ongoing issues with the high school and school district regarding her son's attendance and

medical issues, and the district's proposal for his placement in a residential institution, which

Plaintiff rejected and did not occur. Despite Plaintiff's having been granted an opportunity to

---

[6] Because Plaintiff has not identified the defendant or defendants who violated her First Amendment rights, it is also unclear whether such defendants could be deemed state actors subject to suit under Section 1983.

amend, it is unclear from the amended complaint which Defendants allegedly violated Plaintiff's due process rights, or what constitutionally protected liberty or property interest she invokes. Insofar as Plaintiff's due process claims may relate to her son's IEP, "numerous federal court have held that constitutional due process requirements are satisfied by the procedural safeguards provided by the IDEA and New York implementing regulations." *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 194 (E.D.N.Y. 2015), *aff'd*, 633 F. App'x 14 (2d Cir. 2016). Although Plaintiff does not plead facts about whether she pursued such remedies, she makes no allegation that these administrative procedures were unavailable.

Plaintiff thus has not alleged facts showing that she was denied any process that she was due. The Court therefore dismisses Plaintiff's Section 1983 claim for violations of due process rights for failure to state a claim upon which relief can be granted. 28 U.S.C § 1915(e)(2)(B)(ii).

**D.     Claims under the IDEA**

The IDEA offers federal funds to States that commit to furnish a "free appropriate public education" (FAPE) to children with certain disabilities, 20 U.S.C. § 1412(a)(1)(A), and establishes formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE. Plaintiff appears to bring claims under the IDEA relating to her son's IEP: She alleges, without further elaboration, that in his IEP or other school documents, her son was "falsely put down as 'EDP with SED.'" (ECF 15 at 8.) In other words, Plaintiff asserts that her son was wrongly labeled as emotionally disturbed.

Under the IDEA, parents are members of their child's IEP team, § 1414(d)(1)(B)(i), have an opportunity to participate in IEP meetings, § 1415(b)(1), and may file administrative challenges, §§ 1415(b)(6), (8). A parent may seek an administrative hearing on "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." § 1415(b)(6)(A). When a hearing has been

conducted by a local educational agency, "any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision" to the state educational agency. § 1415(g)(1). Judicial review follows. § 1415(i)(2)(A) ("Any party aggrieved" may bring "a civil action.").[7]

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." *Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131, 132-33 (2d Cir. 2012) (citing *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004)); *see J.M. v. New York City Dep't of Educ.*, 161 F.4th 149, 154 (2d Cir. 2025) ("In the normal course, parents may only sue in federal or state court under the IDEA after exhausting these administrative remedies."). The IDEA's requirement to exhaust administrative remedies is a claim-processing rule and not a limit on a court's jurisdiction. *J.M.*, 161 F.4th at 153 ("[W]e join our sister circuits that have addressed this issue in holding that the requirement here is not jurisdictional but is instead a claim-processing rule.").[8]

---

[7] Parents can proceed *pro se* in federal court in asserting their own claims under the IDEA. The "IDEA includes provisions conveying rights to parents as well as to children." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 529 (2007); *Id.* at 535 ("[P]arents enjoy enforceable rights at the administrative stage, and it would be inconsistent with the statutory scheme to bar them from continuing to assert these rights in federal court"); *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 653 n.2 (2d Cir. 2020) ("[A] parent has an independent enforceable right under the IDEA and may pursue a claim on her own behalf").

[8] Exhaustion of administrative remedies, as generally required by the IDEA, may be excused where it would be futile, where the agency has adopted a policy or practice of general applicability that is contrary to law, where it is improbable that adequate relief is available in the administrative forum, or where the parents have not been notified that such remedies were available to them. *Id.* at 154; *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020). In evaluating whether exhaustion is futile in any given case, courts consider "whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *J.M.*, 161 F.4th at 154.

Plaintiff's allegations might be construed as challenging the proposed placement of her child in a residential facility based on his alleged misdiagnosis as emotionally disturbed. Plaintiff states that she opposed the residential placement, and it apparently did not take place. She makes no allegation that he was denied a FAPE, and E.B. currently attends public school in Brooklyn. By order dated April 14, 2025, the Court had granted Plaintiff leave to replead her claims arising under the IDEA, but the allegations of the amended complaint are again insufficient to clarify what parental rights under the IDEA Plaintiff seeks to enforce.[9] Plaintiff thus fails to state a claim upon which relief can be granted under the IDEA.[10] 28 U.S.C § 1915(e)(2)(B)(ii).

**E.      Americans with Disabilities Act**

Plaintiff briefly invokes the ADA in connection with her son's education, alleging without further elaboration, "Americans with Disabilities Act – misuse IEP." (ECF 15 at 6.) Title II of the ADA forbids discrimination against persons with disabilities in, among other areas of public life, public services, programs, and activities. *See Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs,

---

[9] It is also not clear that any relief would be available to Plaintiff. She does not seek compensatory tuition reimbursement, and damages for lost income, medical bills, or other financial harms are categorically unavailable under the IDEA. *See Perez v. Sturgis Public Sch.*, 598 U.S. 142, 147 (2023) ("[C]ompensatory damages [are] a remedy everyone before us agrees IDEA cannot supply"); *Polera v. Bd. of Education of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478 (2d Cir. 2002). E.B. is no longer enrolled in the Suffern Central School District, and Plaintiff has not made a particular request for injunctive relief that might shed some light on the nature of her IDEA claim.

[10] Plaintiff does not allege any facts in the amended complaint about whether she pursued an administrative challenge to her son's IEP, or allege any facts from which the Court could conclude that exhaustion was futile or can be excused. Because the Second Circuit recently concluded that exhaustion of IDEA remedies is not jurisdictional, *J.M.*, 161 F.4th at 153, the failure to exhaust is an affirmative defense. The Court therefore does not address at this stage whether Plaintiff's claims would be subject to dismissal as unexhausted, or as untimely.

or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act provides virtually identical anti-discrimination protections with respect to programs or activities receiving federal funding. *See* 29 U.S.C. § 794(a).

"[F]ederal courts have disagreed over whether the Supreme Court's decision to confer independent parental standing under the IDEA extends equally to claims brought by parents on their own behalf under Section 504 and the ADA." *A.M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp. 2d 660, 674 (E.D.N.Y. 2012), *aff'd*, 513 F. App'x 95 (2d Cir. 2013). The Court assumes, for purposes of this order, that a parent like Plaintiff can pursue her own independent *pro se* claims under Section 504 and the ADA in connection with her child's education.

To state a claim under Title II of the ADA, a plaintiff must allege: "(1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). The substantive standards for claims under Title II of the ADA and the Rehabilitation Act are generally the same, *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016), although a claim under the Rehabilitation Act must allege that the benefit is part of a "program or activity receiving Federal financial assistance," *Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir. 1998). A discrimination claim can be based on any of three available theories: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton*, 591 F.3d at 43.[11]

---

[11] The Second Circuit has not decided whether "but-for" causation or "mixed motive" causation is required to state a claim under Title II of the ADA or a non-employment discrimination claim under the Rehabilitation Act. *Bolmer v. Oliveira*, 594 F.3d 134, 148-49 (2d Cir. 2010) (discussion in the context of Title II of the ADA). *But cf. Natofsky v. City of New*

Here, Plaintiff disagrees with the assessment that her son was seriously emotionally disturbed. Although Plaintiff does not identify any disability, this could be construed as an allegation that he was regarded as having a disability. She has not alleged facts, however, suggesting that because of this perceived disability, he was denied access to any program or benefit of a public entity for which he was otherwise qualified. *See Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 171 (2017) (providing guidance for determining when allegations should be construed as alleging the denial of a FAPE). Instead, the thrust of the amended complaint appears to be that mislabeling E.B. as emotionally disturbed eventually led to intervention by CPS and Family Court proceedings. Because the amended complaint does not allege the denial of access to any public entity's programs or benefits, or any facts about the failure to accommodate a disability, Plaintiff does not state a claim under Title II of the ADA or under the Rehabilitation Act. The Court therefore dismisses, for failure to state a claim upon which relief can be granted, Plaintiff's claims under the ADA and the Rehabilitation Act. 28 U.S.C § 1915(e)(2)(B)(ii).

**F.      Further Leave to Amend**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend and has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Plaintiff's amended complaint gives no indication that the defects can be cured with a further amendment, and the Court therefore declines to grant Plaintiff another opportunity to amend.

---

*York*, 921 F.3d 337 (2d Cir. 2019) (holding that "but-for" causation applies to employment discrimination claims brought under the Rehabilitation Act).

**G.      Claims arising in Brooklyn**

In Plaintiff's amended complaint, she has added Defendants Fort Hamilton High School and New York City DOE. Plaintiff thereafter indicated that she has filed charges with the United States DOE Office of Civil Rights about her son's education at Fort Hamilton High School in Brooklyn. (ECF 17 at 1-2.) Brooklyn is in Kings County, within the Eastern District of New York. 28 U.S.C. § 112(c). Plaintiff asks that the claims involving Fort Hamilton High School be severed and transferred. Accordingly, because these claims are unrelated to Plaintiff's claims arising in Rockland County, the Court severs these claims, Fed. R. Civ. P. 21, and transfers them to the United States District Court for the Eastern District of New York.

**CONCLUSION**

The Court grants Plaintiff's request to sever the claims arising in Kings County. The Court directs the Clerk of Court to open a new action against only Defendants New York City Department of Education and Fort Hamilton High School and to file the following documents in the new action: (1) the amended complaint from this action, 24-CV-6696 (ECF 15), as the operative complaint, with a filing date of May 14, 2025; (2) Plaintiff's motion (ECF 17); and (3) this Order. The Court directs the Clerk of Court to transfer the new action, under 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of New York.

The remaining claims in Plaintiff's amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's application for the Court to request *pro bono* counsel (ECF 12) is denied. Judgment shall enter.

Dated:    January 20, 2026
          New York, New York

_____
          Louis L. Stanton
          U.S.D.J.